## Laurence Kehoe, in right of Mary J. Kehoe *v.* The Allentown & Lehigh Valley Traction Company, Appellant.

*Negligence—Street railway—Evidence.*

In an action against a street railway company a verdict and judgment for the plaintiff will be sustained where it appears that an electric car in which plaintiff was riding as a passenger, at night, suddenly stopped by reason of the trolley pole becoming displaced; that the lights immediately went out leaving the car in darkness, and that the motorman and conductor took no proper precautions to warn the car which followed, and which collided with the standing car, by which the plaintiff was injured.

*Negligence—Surgical operation—Damages.*

In an accident case it is not error for the court to charge the jury that if they " believe that the surgical operation necessary to relieve or cure the plaintiff was a serious or critical operation, necessarily attended with some risk or failure, then the plaintiff was not bound in law to undergo the operation."

*Practice, C. P.—Trial—Charge of court—Requests for instruction.*

If a trial judge fails to charge on some point which counsel regard as essential, the attention of the judge should be called to it before the jury retire, and more specific instructions requested.

Argued Feb. 2, 1898.   Appeal, No. 470, Jan. T., 1898, by defendant, from judgment of C. P. Lehigh Co., Nov. T., 1896, No. 69, on judgment for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ.   Affirmed.

Trespass for personal injuries.   Before ALBRIGHT, P. J.

At the trial it appeared that the plaintiff, a girl nineteen years of age, was riding as a passenger about ten o'clock on the night of September 2, 1894, in one of defendant's cars. The trolley pole of the car in some way became displaced, the car suddenly stopped, the lights in the car were extinguished and the car left in darkness.   While the car was thus standing on the track another car, following, ran into it from the rear. The evidence on behalf of the plaintiff tended to show that the conductor and motorman took no proper precautions to warn the car following, and there was also evidence that the car following was run at a very high rate of speed.   Plaintiff was injured in the spine.

The court charged in part as follows :

The defendant is a passenger railway company whose business is that of carrying passengers for hire, and, while it is a private corporation, its duties are of a public nature ; it offers to carry, and must carry, everybody who complies with its rules.   [Wherever injury is occasioned to a passenger by something done or omitted to be done in the way of operating the railroad, the law casts upon the railroad company the burden of showing that there was no negligence.]   [5]

In this case, if the plaintiff had anything to complain of, it was of an act which related to the running of the railroad ; it was not the case of passengers sitting on a car at the terminus, or at a stopping place or station, but it was the case of a car stopping on the line accidentally, and where otherwise it would not have stopped, by reason of the power ceasing, and there that car was run into.   [This is a case where the acts complained of were done in the way of operating the railroad, and

the plaintiff was a passenger on the car, and in her seat; and, therefore, she is not compelled to take the burden of proving negligence on the part of the company, but the company must show that there was an absence of negligence on its part, and that its employees did all that was required of them under the circumstances, and that they did nothing which they ought not to have done under the circumstances.] [6]

Is negligence by the defendant shown? [The charge of negligence consists in the omission on the part of the conductor or the motorman in the front car, in not going back and preventing any approaching car from striking it, and on the part of the approaching and following car running into the other; it is also charged that the latter car was running at an undue rate of speed, at a higher rate of speed than was consistent with the safety of the passengers.] [7]

If there was anything in the running of the cars—running the latter car too fast, all the circumstances being borne in mind—it was ten o'clock at night—and if prudence and care, such as the company owed, required that the car should not be run at that rate of speed at that hour, and with probability, there is no proof as to that, of other cars being on the same line and on the same track, or if it is proved that the men in charge of the first car could have prevented the other from running into them if they had done what they could, and should have done, in going back and warning the approaching car, if thus the injury could have been prevented, then that was negligence on the part of the company, and if that is not proved, then, although the plaintiff was hurt, the defendant cannot be required to pay; that is, the company was not bound to use the utmost degree of care which the human mind is capable of imagining, but was bound to use the highest degree of practical care and diligence that is consistent with the running of passenger cars operated by electricity. With these instructions as to negligence we pass on to other branches of the case. If no negligence is found on the part of the employees of the company, then, although the plaintiff was hurt, you will say that your verdict is for the defendant. If you find negligence on the part of the defendant then you will inquire whether the plaintiff was injured in her person as she alleges.

The injury complained of, and the only injury complained

of, is that to the spine of the plaintiff. She alleges that the last bones of the spine, called the coccyx, were hurt by that sitting down of herself violently, or being thrown down, and that in consequence of that she has suffered up to this time from it, not much from the beginning, but that it has been growing worse ever since, and that she is at the present time still suffering from that injury, and that her general health has been impaired in addition to the local hurt, and harm and disquiet, and that in the future she will continue to suffer. She has told you what pain she felt in the beginning, and from then on—I believe I am correct in saying that a physician was first called on March 16, 1895, this collision taking place on September 2, 1894. Dr. Edwards was then called, at South Bethlehem, and he and the plaintiff and the plaintiff's sister have told you what the sore and hurt was, and that the part I have alluded to was then inflamed and painful, so the doctor and the plaintiff say, and then there was a lancing of it, and the pus or matter was taken out. Dr. Edwards gave attention to her for a certain time, which you will remember, after which there was no medical attendance until July, 1896, something like a year and a half afterwards, when she was examined and treated by Dr. Hickey, in Philadelphia, where she had gone to stay, and you have heard as to how he found those parts, and what he did; he also lanced it, and later on Dr. Hartzell, who acted for the company—it would seem that the company had found out sometime in the latter part of 1896 that she complained of having been hurt in 1894, and then they requested Dr. Hartzell to see the plaintiff, and he did see her, and he told you what he then observed, and recently, within the last few weeks, Dr. Horwitz of Philadelphia saw the plaintiff, and he describes what he observed, and the plaintiff and her sister and, perhaps, others have told you what they observed of her condition all along.

[Now, gentlemen, on the plaintiff's part it is asserted that this injury from which the plaintiff says she is suffering, and no doubt was suffering at times, and is suffering at this time, was occasioned by this collision; on the part of the defendant this is denied. The burden is on the plaintiff to show that her hurt is ascribable to this accident. It is not a case where, immediately upon a collision, one is found to be maimed or in-

jured, or complains at once, but is a case where, at least the serious injury, it seems, was developed a half a year or more afterwards; and so the burden is on the plaintiff to satisfy you before she can recover, that the injury she is laboring under was caused by the collision of these cars. If she has not proved that, even if the company was at fault in occasioning the collision, then she cannot recover. Of course, it need not be explained to you that if the collision did not hurt her, but that this sore came on from other causes, as the defendant claims that it did, then the railroad company would not be required to pay her any damages. On this point there is a good deal of testimony, including the opinions of the physicians, and other testimony as I have already stated, and it is one of the main questions in the case, and perhaps the one most controverted. You will ask yourselves, and you will determine whether it is proved that the collision and the jar which threw her down on her seat occasioned the harm she is now complaining of. The testimony is probably conflicting, and it is evident, to reconcile it as to every witness that testifies to a matter material to this or any other point, you will have to ask yourselves whether this or that witness is to be believed. The plaintiff has told you how she felt in regard to her pains and so on; of course, as to some of those things no one could know but herself, that is, as to how the matter affected her, and what her pains were; as to that testimony, and the testimony of every witness in the case, you will consider the interest or prejudice of the party, and, if you believe that owing to interest some one has said what you believe not to be true, or owing to prejudice, or possibly the hope, on the part of defendant's witnesses, to serve the company, or on the part of the plaintiff to secure to the plaintiff a sum of money, if, owing to any of these causes, you think a witness is not reliable and truthful you will reject that testimony. As to the physicians, some of them examined the plaintiff and saw the hurt; they gave opinions as to what had probably caused it, or what might have caused it, and as to whether it is possible or probable that the manifestations of that hurt in March, 1895, and again in July, 1896, was referable to this accident in September, 1894, and also as to the seriousness of it, and what should or must be done to cure it. I say these physicians expressed opinions, some of them no doubt,

basing part of their opinions upon what the plaintiff said—either stated to the physician who examined her, or which she testified to here in court, and there will be involved in the doctor's opinion the question as to whether the plaintiff told the truth, or whether she made the statement stronger than the fact was; then, some physicians who did not examine the plaintiff were permitted to give opinions, because they were experts. Owing to their learning and practical business engagements they are well informed as to those matters, and they gave opinions as to what they believed to be the facts, if certain things that were stated to them in questions propounded to them were true.    You will readily see that their opinions must be affected by the underlying facts upon which they based them as to whether those alleged facts are such.] [8]

[Gentlemen, you will consider the question whether the injury for which the plaintiff seeks to recover damages was occasioned by the railway accident on September 2, 1894; if that is not proved, then you will find a verdict for the defendant, and if it is proved, then you will pass upon the question of damages,] [9] and if you will reach the question of damages, one branch of it · will relate to the future.    It was suggested in the case that she was permanently disabled, and that as long as she lived, even if she lived out the allotted time, or the probable number of years that one of her age will attain, that all that time she would be a cripple, or disabled, and of impaired health.    There is no evidence in the case from which you could find that to be the fact; no one who could testify on that point has testified that the injury will be permanent and exist all the time; in other words, the testimony that must control in that respect is that the hurt is curable, and that as far as we know, and as far as you would be permitted to decide, it must be taken that a time will come when she will be cured, and her troubles will be at an end; how long, and how serious the sufferings and deprivation in the future will be, will be a question for you.

As to the matter of damages, of course, you will readily understand that you are not here for the purpose of declaring how much money you will appropriate from the railroad company's funds to Miss Kehoe, the plaintiff, and that you can decide any sum, and just say so much the plaintiff shall have. This is a court of justice, and courts and juries proceed upon

facts, and they proceed according to certain rules that govern all men under the same circumstances, and these rules are what we term the law of the land and by which we are all bound. [It is the concern of the court to see that justice is done in this case ; that is what the court is created for, and it is further the concern of the court that if you find for the plaintiff your verdict shall not be an abortion, and a miscarriage of justice, and that it shall not be such a verdict as ought not to stand, and which the laws of Pennsylvania will not permit to stand ; if the plaintiff is entitled to a substantial sum, it would be a wrong if you should give her but a pittance, and, if she is entitled to a certain sum, and you should suffer yourselves to be carried away by improper considerations and give her three, or five, or twenty times as much, it would be equally wrong. You are to be governed by rules which I will now state to you. It has been mentioned by plaintiff's counsel, and I call your attention to it, not for the purpose of criticising him, but for the purpose of preventing a probable mistrial, that his mistake probably was in declaring only for $20,000 ; that it ought to have been $40,000, and that a $100,000 would not pay the plaintiff, and that all the money in the defendant's counsel's bank would not be too much to give her, and make her whole, and that if for all the days in the year the whole income of the railroad company was given to her that it would hardly make her whole. I do not blame plaintiff's counsel for this ; in the excitement of arguing the case to the jury things of that sort are often said, and it is always better that the counsel should be a little too urgent and enthusiastic than not enough so ; but, gentlemen, if ideas of that kind were acted upon by you, this trial would amount to nothing, and the verdict you would return, based upon ideas of that sort, would stand neither in this court nor in the higher court.] [10]

I will now state to you the rules which govern the determination of the question of damages in this case if you find for the plaintiff. You will understand, gentlemen, that sometimes, for a personal injury, the party who is responsible, who has acted unlawfully and has inflicted an intentional hurt—if a man by lying in wait, or intentionally beats another and hurts him, the jury may award to the plaintiff a sum which will compensate him for his injury, and they may inflict a further sum upon the

defendant to punish him for the intentional wrong, for his high-handed act. The law calls this punitive damages. But an action of the sort you are trying does not proceed upon that theory; it is not alleged here that the railroad company, or the motorman, or the conductor intended to harm the girl; it was an injury to her, if it was caused by them, by what we term an accident, or by reason of what I have explained to you is termed in law negligence. Nothing is to be taken from the railroad company and given to the plaintiff for the mere sake of vengeance; but she is entitled to compensation. [She is entitled, if she recovers, to have awarded to her the expense which she necessarily incurred in medical and surgical treatment, attendance, nursing and care, down to this time, and what you believe might be necessarily incurred by her in the future until she is cured and healed. What that is reasonably worth she is entitled to. It has been adjudged by our highest court, and it is proper that I should call your attention to it, that, in the way of nursing and care, what is done by a member of the family, that is, not a hired servant, is not to be calculated by the jury. For instance, if a person is hurt, and his parents or brothers or children nurse him, the party who is served does not owe them any pay for it, and if it is done as a mere kindness, and because of family relation, then there is nothing to be given in an action of this sort for damages on that score. Then, secondly, she is entitled to compensation for loss of time and loss of earnings. Where a person is injured and is proceeding in the way this plaintiff is proceeding the jury inquire what that individual could have earned from the time of the injury down to the trial, and which he lost by reason of the impairment of his earning power; where one earns much in his usual employment, it is a large sum, and where little the sum is but small. No doubt, the plaintiff could have done something all along if she had not been hurt. She was learning the dressmaking trade and, I believe one witness said that she had since the injury finished learning, but I am not sure as to that; she was learning the dressmaking trade, and her allegation is that this injury prevented her from learning, or at least following that trade, and she could have earned something, no doubt, up to this time; after the injury, how much did she lose in earnings, and then how much will she lose in the future in earnings? Therefore,

you have in the first place as an element of damages, expenses
necessarily incurred in the past and to be incurred in the future,
earnings, wages or compensation for work in the past and in the
future.   Then, there is another item for which the plaintiff is
entitled to recover, if she does recover, and that is termed com-
pensation for suffering or pain.   As to that the duty rests upon
the court to give you explicit instructions.   This is a matter
which cannot be readily defined—what a person shall be paid
for pain in the past or in the future; but where there is such
suffering the law says that it may be compensated, and that the
jury may and ought to allow something for it.   The jury may
consider also the nature of the injury, the pain and incon-
venience resulting from it, and make such allowance therefor
as in view of all attendant circumstances may be just and rea-
sonable; the age and health and habits and pursuits of the
plaintiff must be taken into consideration in determining what
is a reasonable allowance for inconvenience and suffering in any
given case.   I have spoken of pain and suffering; there belongs
to it the item and feature of inconvenience.   The absence of a
cruel or wanton purpose in the defendant must not be over-
looked.   From the whole case the question is what is a reason-
able allowance for the suffering necessarily endured, and the
Supreme Court say that this should not be estimated by a
sentimental or a fanciful standard, but in a reasonable man-
ner.] [11]

Plaintiff's points and the answers thereto among others were
as follows:

1. If the jury believe that the accident to the plaintiff was
caused by some disarrangement or defect in the motive power
or running gear of the electric car, and that the plaintiff was
injured, then the presumption of negligence is raised against
the defendant, and the defendant must prove that the accident
was not caused by its negligence.   *Answer:* Affirmed. [1]

4. If the jury believe that the plaintiff was injured by an
accident arising from a collision caused by a defect in the ma-
chinery or roadway, she is required to prove no more than the
fact of the accident and the extent of the injury, and the bur-
den is on the defendant to disprove negligence.   *Answer:* Af-
firmed as to the machinery; there is no evidence of defect in
the roadway. [2]

16. If the jury believe that the surgical operation necessary to relieve or cure the plaintiff, was a serious or critical operation, necessarily attended with some risk of failure, then the plaintiff was not bound in law to undergo a serious and critical surgical operation which would necessarily be attended with some risk of failure. *Answer:* Affirmed. [3]

17. If the jury believe that such operation was dangerous and critical and attended with risk of failure, she was privileged to exercise the liberty of choice under such circumstances as to whether suffering and feebleness, resulting from the injury would be endured or whether the surgeon's knife should be used. *Answer:* Affirmed. [4]

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Errors assigned* were (1–11) above instructions, quoting them ; (12, 13) the charge was inadequate and misleading.

The appellee moved to quash the appeal on the ground that the trial judge had not certified his approval of the charge as printed in defendant's paper-book ; but the certificate was produced of even date with the notice, and the motion denied.

*R. E. Wright*, with him *Kauffman & Reninger*, for appellant. —We do not complain that the court erred in any specific language used, or in any rule laid down in the charge to the jury, but that the charge was not such a presentation of the defendant's case on the subject as we were entitled to have. In Herstine v. Lehigh Valley Railroad Company, 151 Pa. 248, the verdict was set aside because the court, while not giving any erroneous instructions to the jury, failed to present to them as fully as it ought to have done, the defendant's case as developed by the testimony. To the same effect are the following cases : Fineberg v. Second & Third Sts. Pass. Ry. Co., 182 Pa. 97 ; Hess v. Williamsport & North Branch R. R. Co., 181 Pa. 492; Lerch v. Bard, 177 Pa. 197 ; Penna. Canal Co. v. Harris, 101 Pa. 81 ; Reber v. Herring, 115 Pa. 599 ; Richards v. Willard, 176 Pa. 181 ; Peirson v. Duncan, 162 Pa. 187.

Plaintiff cannot recover compensation for any damage which she might have avoided by the use of ordinary care and diligence after becoming aware of the injury of which she complains :

1 Sherman & Redfield on Negligence, sec. 99 ; 1 Sedgwick on Damages, sec. 202 ; Louisville, etc., R. R. v. Falvey, 104 Ind. 409 ; Tuttle v. Holyoke, 6 Gray, 447 ; Osborne v. Detroit, 32 Fed. Rep. 36 ; Bradford v. Downs, 126 Pa. 622 ; 3 Rapalje & Mack's Digest of Railway Law, 3, p. 637 ; R. R. Co. v. Pennell, 94 Ill. 448 ; Ry. v. Pindar, 53 Ill. 447 ; G. C. & S. F. R. R. v. Mannewitz, 34 American & English R. R. Cases, 430 ; Goshen v. England, 21 N. E. Rep. 978 ; Potter v. Warner, 91 Pa. 362.

*Arthur G. Dewalt*, for appellee.—Those who have been injured by the recklessness or carelessness of corporation employees are not compelled to undergo serious and critical operations, in order that the damages which such corporation may be called upon to pay shall be lessened : Vallo v. United States Express Co., 147 Pa. 408 ; Mattis v. Philadelphia Traction Co., 19 Pa. C. C. R. 106.

Omissions of the court below to charge specifically are not assignable for error where no points for instructions were presented. If parties desire specific instructions, it is their duty to request them to be given : Serfass v. Dreisbach, 141 Pa. 142 ; Com. v. Zappe, 153 Pa. 498 ; Com. v. McManus, 143 Pa. 64 ; Follmer v. McGinley, 146 Pa. 517 ; McCloskey v. Bells Gap R. R., 156 Pa. 254 ; Fredericks v. Northern Cent. R. R., 157 Pa. 103.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 17, 1898 :

As to the preliminary question in this case, it is sufficient to say that the learned trial judge's certificate of even date with the motion to quash the appeal, etc., is a sufficient answer thereto and the motion is accordingly denied.

It was of course incumbent on the plaintiff to prove that the personal injury of which she complained was the direct result of defendant company's negligence. For that purpose testimony was introduced which tended to prove such a state of facts as warranted the verdict on which the judgment was entered. As stated by defendant's counsel, the entire burden of the defense was practically made up of these two propositions : (1) "That the injury complained of was not the result of the accident," and (2) "assuming that it was, then the injury was

not of a permanent character, but one that could quickly and permanently be cured by proper medical treatment, namely, by a simple surgical operation, attended with no pain (if anæsthetics were used or the patient etherized) and free from serious danger."

Without attempting to review or discuss the testimony upon which the parties respectively relied, it is sufficient to say that, upon the evidence properly before the court, the case was one that involved questions of fact which the learned trial judge was bound to send to the jury for their consideration and determination. The case was accordingly submitted to them in a clear, comprehensive and fully adequate charge in which there appears to be no substantial error. All the questions of fact upon which the right of the plaintiff to recover depended were thus definitively settled by the verdict in her favor. In view of the evidence as to the serious and probably permanent character of plaintiff's injuries, the sum awarded her as damages cannot be regarded as excessive.

The subjects of complaint in the first four specifications are the court's answers to plaintiff's points for charge, recited therein respectively. The evidence tended strongly to prove the facts of which each of these points is predicated, and hence the plaintiff had an undoubted right to request that the jury be instructed as to the law applicable thereto. The court's answer to one of them was: "Affirmed as to the machinery,— there is no evidence as to the roadway." This qualification was strictly proper. The others were rightly affirmed without any qualification. Our examination of the record has failed to disclose any error in either of them.

In affirming the points covered by the third and fourth specifications, supra, the court, in the language of the points, instructed the jury: (1) If they "believe that the surgical operation, necessary to relieve or cure the plaintiff was a serious or critical operation necessarily attended with some risk of failure, then the plaintiff was not bound in law to undergo a serious and critical surgical operation which would necessarily be attended with some risk of failure." (2) If they "believe that such operation was dangerous and critical and attended with risk of failure she was privileged to exercise the liberty of choice, under such circumstances, as to whether suffering and

feebleness resulting from the injury would be endured or whether the surgeon's knife should be used."

These two points were doubtless presented for the purpose of calling attention to the second ground of defense above quoted, and eliciting explicit instructions as to the law applicable thereto. In view of the evidence relating to the subject, there cannot be any doubt as to the correctness of the instructions given by thus affirming the points. Indeed, the learned counsel for defendant, in their argument frankly admit the fact by saying, "We do not complain that the answers . . . . were in themselves an incorrect statement of the law, but we do complain that these answers, taken in connection with the entire omission of the trial judge to refer to the case of the defendant (company) or its testimony on this subject, made the charge inadequate and misleading." This complaint, that the charge was thus made inadequate and misleading, is unwarranted and cannot be sustained. Substantially the subjects of complaint are embraced in the twelfth and thirteenth specifications. As to the ground of defense referred to in the first of these specifications, the same was considered by the learned trial judge at some length and, while the specific items of evidence were not reviewed, the general features of the testimony relating thereto were carefully and impartially considered, as is shown by that part of the charge recited in the eighth specification. If more specific instructions were desired they should have been requested. No requests for instruction were presented by the defendant company. Such complaints as are now made on its behalf come with bad grace; and this is especially so where the instructions are as full and comprehensive as they are in this case. If, as was said by this Court in Com. v. Zappe, 153 Pa. 501, the trial "judge fails to charge on some point which counsel regard as essential to the defense, it is only fair to him that his attention should be called to it before the jury leave the bar, in order that he may correct any omission, if any has been made." This obviously just and indispensable rule forcibly applies to both specifications.

The fifth to eleventh specifications, inclusive, are to portions of the charge recited therein. Considered in connection with other parts of the general charge, there is no error in either of these excerpts. As already stated, the charge as a whole is

clear, comprehensive, fully adequate and free from substantial error. The case was carefully and correctly tried, and the judgment should not be disturbed.

Judgment affirmed.