**LEWIS v. PENNSYLVANIA R. CO.**
**Civ. A. 10618.**

United States District Court
E. D. Pennsylvania.
Oct. 4, 1951.

John M. McNally, Jr., Philadelphia, Pa., for the plaintiff.

Theodore Voorhees, F. Hastings Griffin, Jr. and Barnes, Dechert, Price, Myers & Clark, all of Philadelphia, Pa., for the defendant.

CLARY, District Judge.

The matter is before the court for disposition of defendant's motion for a new trial after a verdict in favor of the plaintiff in the sum of $60,270.

The action is based upon the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for a back injury sustained by the plaintiff when the locomotive in which he was riding as a fireman derailed and overturned near Lykens, Pennsylvania, on March 10, 1949, in the late afternoon. The derailment occurred on one of the so-called secondary tracks of the Pennsylvania Railroad, a single track extending from Millersburg to Lykens, Pennsylvania. The only train and train crew which defendant operated over that track was that to which the plaintiff was attached as fireman. The derailment occurred at or near a switch permitting operation from the single main track onto a "scale track". On the previous day, March 9th, the plaintiff himself had operated that switch in the last known movement of the switch. He testified that he had fixed the switch in a position for operation on the main track only. The train was operated thereafter through the switch with the engineer on the switch banner side and he testified that at the time the locomotive passed over the switch in an easterly direction towards Millersburg the switch had been properly set. On the return trip the following day with the fireman plaintiff on the switch banner side, he testified that the switch appeared to be in proper order but a derailment occurred at or near the switch, as a result of which plaintiff was thrown from the locomotive and sustained a ruptured intervertebral disc, which under the testimony clearly resulted in complete disability up to the time of trial.

The trial consumed practically all of three full days and a part of a fourth day. The situation in respect of the trial was somewhat complicated in that in his closing speech defendant's counsel for the first time admitted negligence on the part of the railroad on an explanation advanced by the defendant as to the cause of the happening of the derailment, to wit: .

1. That Lewis, plaintiff, had not closed the switch in the first instance the previous day.

2. That Hewitt, the engineer, had "run through" the switch damaging it.

3. That the "run through" switch resulted in a cocked switch banner or target which the plaintiff saw, or should have seen, on the return trip on March 10th.

4. That the combined negligence of the two employees, Lewis and Hewitt, caused the derailment and the resultant injury.

In the absence of the jury at the conclusion of the third day of trial, the court carefully questioned defense counsel to ascertain the limits of defendant's concession, and was informed that negligence was admitted only under the defendant's theory of the case. Because of that qualified admission it became necessary for the court to advert to the facts of the case a little more extensively in the charge than customarily. A reading of the notes of testimony indicates that both counsel were asked to argue fully the facts to the jury as it was not the intention of the court to do other than briefly outline the case.

During the trial, while admitting the fact of painful injury, defendant produced testimony to indicate that an apparently simple and minor operation might alleviate or cure plaintiff's condition. This testimony was in direct conflict with testimony adduced by the plaintiff that the operation in question was a serious operation definitely in the "risk" class, attended by risk of failure or death. Plaintiff produced a prominent neurosurgeon, one who had performed upwards of five hundred of the type of operation here involved. Main reliance was placed by the defendant upon the testimony of a psychiatrist of many years experience who had never, however, performed a surgical operation.

The defendant's arguments in support of its motion for a new trial may be briefly summarized as follows:

1. The court erred in its charge to the jury regarding the duty of the plaintiff to mitigate damages by submitting to an operation.

2. The court's charge unfairly presented the case to the jury by unduly emphasizing the plaintiff's case.

3. The court erred in allowing the jury to consider the size of the switch target or banner as bearing on the question of de-

fendant's negligence and plaintiff's contributory negligence.

4. The court erred in allowing the jury to infer negligence from the fact of derailment other than on the defendant's explanation of the cause of the derailment.

■ As to point number **1**, the defendant argued that the court *directed* the jury to award damages for permanent disability without cautioning the jury to consider that the plaintiff was under an obligation to take such steps as a reasonably prudent man would and should take to minimize personal injuries and to submit to an operation if a reasonably prudent man would do so. The law is clear that an injured party *must* take reasonable steps to reduce damages; if injuries may be cured or alleviated by a simple and safe surgical operation, then refusal to submit thereto should be considered by the jury in mitigation of damages, but that is not true where the suggested operation is serious and attended with grave danger. Potts v. Guthrie, 1925, 282 Pa. 200, 127 A. 605; Kehoe v. Allentown & L. V. Traction Co., 1898, 187 Pa. 474, 41 A. 310; Martin v. Pittsburgh Railways Co., 1913, 238 Pa. 528, 86 A. 299, 48 L.R.A.,N.S., 115. By taking part of a sentence out of context, defendant has argued that the court *directed* the jury to find that plaintiff was under no obligation to submit to an operation. A reading of the entire charge shows that the question was left specifically to the jury. The court did comment to the jury that it would be difficult from the testimony to find that this was a simple operation, unattended by risk of either failure or death. This expression of opinion, which the court had instructed the jury was not binding upon it, was based upon the clearly overwhelming evidence which indicated to the court, as it must have to the members of the jury, that this was a serious, and not a simple, operation. This expression of opinion was justified under the evidence. The court clearly instructed the jury that there was a positive duty on the plaintiff to submit himself to a simple operation and it was implicit in its instruction that this was a continuing duty upon him if at any time it should be determined that

the operation was safe and was not attended by either risk of failure or death. I do not believe the jury was in the least confused by the charge of the court as to this aspect of the case.

■ As to the second point, that the court's charge unfairly presented the case to the jury, the defendant specifically complains that the court emphasized the defendant's concession of negligence without explaining the nature of the concession or its limitation. The defendant sought full advantage of its concession of negligence in the sense that its theory would necessarily involve contributory negligence on the part of the plaintiff. It now objects strenuously that the court did not charge the jury that unless the jury accepted the defendant's explanation, it could not find negligence on the part of the defendant. The fact of derailment calls upon defendant railroad to make an explanation. Jesionowski v. Boston & Maine R. R. Co., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416. The mere fact that it makes an explanation does not in and of itself compel the jury to accept it. The jury, if it is not satisfied, is free to reject the explanation. There is then left for the jury's consideration an accident which ordinarily occurs as a result of negligence which may be attributed only to lack of care by the railroad which had the instrumentalities within its control. Particularly pertinent at this point is the following language from the Jesionowski case, 329 U.S. at page 458, 67 S.Ct. at page 404: "Once a jury, having been appropriately instructed, finds that the employee's activities did not cause the derailment, the defendant remains as the exclusive controller of all the factors which may have caused the accident. It would run counter to common everyday experience to say that, after a finding by the jury that the throwing of the switch and the signaling did not contribute to the derailment, the jury was without authority to infer that either the negligent operation of the train or the negligent maintenance of the instrumentalities other than the switch was the cause of the derailment. It was uncontroverted that the railroad had exclusive control of both. We think that the facts support the jury's

findings both that the deceased's conduct did not cause the accident and that the railroad's negligence did."

■ Another proposition under point number 2 is that the court did not properly emphasize the question of contributory negligence and its effect on damages. I think that what defendant actually complains of is that the court did not, at each point at which damages were mentioned, reiterate the effect of contributory negligence on such damages. Contributory negligence and its effect on damages was clearly dealt with at the outset of the charge and was called to the attention of the jury on at least two other occasions, one at the conclusion of the damage phase of the charge.

Defendant has also taken out of context the reference of the court to full recovery of loss of wages up to the time of trial and argued that this took away from the jury any question of diminution thereof for any reason. The charge clearly indicates that that expression was used to contrast recovery of past losses with awards for loss of future earnings which the jury was required to reduce to present value. It was in that connection and in that connection only that the expression was used. It was made abundantly clear to the jury that if it found plaintiff guilty of contributory negligence, that finding would require them to reduce all damages by the proportion attributable to plaintiff's negligence.

A further complaint under this point is that the court characterized certain evidence as "positive" and other evidence as "opinion". In answer to this complaint, I feel that it is fully answered by the quotation of the portion of the charge referred to: "There are two kinds of evidence in this case. There is positive evidence in this case and there is opinion evidence. You have the testimony of the plaintiff Lewis and of Mr. Hewitt and that is positive testimony. They say that they were there. They say 'We saw certain things. We are eye witnesses. We were there and we saw it and this is the fact'. That is positive testimony. They saw something. They looked at it. On the other hand, you have opinion evidence, after-the-fact evidence. Both are important, and it is for you to determine the value of each. You have the testimony of the men who came on the scene afterwards and who say, 'From the result that we saw there, it is our distinct opinion that that was a run through switch'."

■ I do not feel that the jury was at all misled as to what, if any, technical difference there might be between positive and opinion evidence. It was pointed out that two witnesses were testifying as to the facts of the accident and the defendant's witnesses were testifying as to how, in their opinion, the accident happened based upon what they in fact saw after the accident happened. Nothing more was intended and I can see nothing to confuse or mislead the jury.

■■ A further point advanced by the defendant in support of its motion for a new trial is that the court should not have allowed the jury to consider the size of the switch banner or marker. It argues that since the plaintiff failed to show that the banner was different than banners used on other switches of similar lines, the jury could not find that it was an inadequate signal. What the usual practice is on a railroad affords some evidence from which a jury may find that such a signal is reasonable, but the jury is not bound to so find. The court specifically instructed the jury that it could consider whether it was the type of banner or marker that the plaintiff could or should have seen under the conditions that existed on the day of the accident in question. This had a direct bearing on the question, raised by the defendant, of contributory negligence on the part of the plaintiff, and it also had a bearing on whether defendant was negligent in failing to provide a signal of sufficient size to be seen from a safe distance. This was just one of the many factors submitted by the court for consideration of the jury on the overall question of negligence and contributory negligence.

■ Finally, the defendant has requested the court to either reduce the verdict or grant a new trial on the ground that this verdict is grossly excessive. Samuel B. Lewis, the plaintiff, was thirty-two years

of age at the time of injury and was thirty-four years old at the time of trial. His earning power at the time of the accident was agreed upon as $395 per month. He had a life expectancy of 32.50 years from the time of trial. There was ample evidence in this case from which the jury might have found that this man was permanently and totally disabled. That the injuries were serious and painful is unquestioned. Considering the seriousness of the injury, plaintiff's age, loss of earning power, and pain and suffering, an award in this amount is certainly not such as to shock the conscience of the court and justify interference with the jury's determination.

An order will be entered in accordance with this opinion.