Charles Joseph McGINLEY

v.

UNITED STATES of America.

UNITED STATES of America

v.

NORTHERN METAL CO.

Civ. A. Nos. 69-828, 69-2766.

United States District Court,
E. D. Pennsylvania.

June 3, 1971.

---

Louis Samuel Fine, Fine, Staud, Silverman & Grossman, Philadelphia, Pa., for plaintiff.

Harrison G. Kildare, Rawle & Henderson, Philadelphia, Pa., for the United States.

James B. Doak, LaBrum & Doak, Philadelphia, Pa., for Northern Metal Co.

## FINDINGS OF FACT, DISCUSSION and CONCLUSIONS OF LAW

HAROLD K. WOOD, District Judge.

This is an action brought pursuant to the Suits in Admiralty Act, 46 U.S.C. § 741 et seq. and the Public Vessels Act, 46 U.S.C. § 781 et seq. in which plaintiff, Charles Joseph McGinley is suing the United States of America for injuries which he sustained while working aboard the SS CITADEL VICTORY. Liability having been admitted, the instant action involves solely the issue of damages. Subsequently the United States will try its indemnity action against plaintiff's employer, Northern Metal Company.

We make the following

## FINDINGS OF FACT

1. On February 11, 1968, plaintiff, Charles Joseph McGinley, presently 45 years of age, was employed by Northern Metal Company as head stevedore foreman.

2. On that day, during the course of his employment, he was required to go down into the No. 2 hold of the SS CITADEL VICTORY, then berthed at the Northern Metal Company terminal, in order to make an estimate of the remaining cubic content available for cargo.

3. As plaintiff descended a vertical steel ladder into the No. 2 hold, he had his feet on one of the rungs of the lower tween deck ladder and held the bottom rung of the upper tween deck ladder with his right hand.

4. As he exerted a pull on this rung, it came loose in his hand, causing him to fall from the ladder.

5. In order to break his fall, plaintiff caught a rung in the lower tween deck ladder in his left hand. This caused his body to swing and strike the ladder on his left side.

6. Plaintiff rested for several minutes at the lower tween deck level, then ascended the ladder and reported his fall and the condition of the ladder to the chief officer of the vessel. He then continued to work for the remainder of the day.

7. The next morning the entire left side of plaintiff's body was black and blue and swollen. (N.T. 162)

8. Plaintiff visited Dr. Micek who was Northern Metal Company's physician. Dr. Micek took X-rays and prescribed medication, and on subsequent visits recommended whirlpool and heat treatments. (N.T. 163)

9. Plaintiff did not feel that he was benefitting from these treatments and visited Dr. Hoffman, an orthopedist, who took X-rays and prescribed medication. (N.T. 164)

10. Plaintiff continued to work at Northern Metal Company until April 15, 1968. (N.T. 151)

11. On April 15, 1968, plaintiff was admitted to Pennsylvania Hospital by Dr. Langfitt who surgically removed a herniated cervical disc.

12. Dr. Langfitt also treated plaintiff for his low back pains and performed a myelogram on him while he was in the hospital. (N.T. 151)

13. Plaintiff attempted to return to work on or about July 8, 1968, but was unable to work because of pains in his low back. (N.T. 152)

14. Plaintiff again returned to work on or about September 3, 1968, but was able to work only until November 6, 1968, at which time he left because of pains in his back. (N.T. 154)

15. On November 6, 1968, plaintiff was admitted to University of Pennsylvania Hospital for approximately twenty days, during which time a second myelogram was performed and plaintiff underwent various treatments. (N.T. 154)

16. After plaintiff was discharged from the hospital he continued to receive outpatient physiotherapy. (N.T. 154–5)

17. On January 3, 1969, plaintiff was readmitted to University of Pennsylvania Hospital where exploratory surgery was performed on his spine. The surgery revealed no significant disc bulge. Plaintiff was discharged from the hospital on January 22, 1969. (N.T. 155)

18. Plaintiff returned to work on March 31, 1969, and continued to work until on or about September 4, 1969. (N.T. 156)

19. On or about September 4, 1969, while talking to a co-worker, plaintiff felt a sharp pain in his low back which caused him to collapse. (N.T. 156)

20. Plaintiff returned to Dr. Langfitt who subsequently readmitted him to University of Pennsylvania Hospital on October 1, 1969. He was placed in traction for ten days and discharged on October 13, 1969. (N.T. 157–8)

21. Plaintiff has not worked since September 4, 1969.

22. Plaintiff has not been advised by Dr. Langfitt to undergo any further operations. Dr. Langfitt did advise plaintiff that he would be willing to perform another operation if plaintiff wished it, notwithstanding the poor chance of success. (N.T. 104–5)

23. If plaintiff is suffering from a herniated disc, a spinal operation would have a 60 to 70% chance of relieving his pain and disability. (N.T. 76, 241, 280)

24. If plaintiff is suffering from arachnoiditis, an inflammation of the covering of the spinal cord, such an operation would not improve his condition. (N.T. 243)

25. Further surgery could worsen plaintiff's condition. (N.T. 51, 104)

26. It is most likely that plaintiff is suffering from arachnoiditis. The arachnoiditis may be the primary cause

of his pain or it may be associated with a herniated disc. (N.T. 18, 74, 91, 107, 233, 243)

27. Plaintiff is permanently disabled from performing his former duties as head stevedore foreman. (N.T. 25, 75, 108)

28. Plaintiff is unable to engage in any activity which requires protracted walking, climbing, lifting or bending. He is also unable to remain seated for any extensive period of time. (N.T. 27, 41, 75, 108)

29. Plaintiff's pain and disability are caused by the injuries which he sustained aboard the SS CITADEL VICTORY and the subsequent necessary treatment which he received, namely the injection of fluid into his spinal canal. (N.T. 19, 37, 71)

30. In order to obtain employment as a checker or a dispatcher, it would be necessary for plaintiff, who attended one year of high school, to complete his high school education, receive additional vocational training and obtain membership in the appropriate union. Plaintiff would have difficulty performing such a job because of his pain. (N.T. 27–8, 45–6, 179)

31. There is a very poor record of success in placing in indoor work a person who has worked outdoors all of his life as plaintiff has done. (N.T. 27)

32. There is no evidence of any employment which plaintiff, considering his condition, working background and education, can obtain.

33. The medical records and testimony indicate that plaintiff was suffering from disc degeneration which was progressing at the time of his accident. While this disc degeneration is not the cause of his present disability, this condition would have prevented his employment as head stevedore foreman beyond the age of 55. (N.T. 261–4, 268)

34. Plaintiff has been deprived of ten years' future income because of the injuries which he suffered aboard the SS CITADEL VICTORY.

35. Plaintiff earned $14,640 in 1966 and $16,208 in 1967. His average income for those two years is $15,424. (N.T. 53, 55)

36. Plaintiff's future loss of earnings, based on an income of $15,424 per year and reduced to present worth, totals $117,222. (N.T. 57)

37. Plaintiff's earnings for 1968 and 1969 were $13,278 and $8,809 respectively. (N.T. 151)

38. Plaintiff's past loss of earnings to June 1, 1971, based on an income of $15,424 per year, totals $30,610.

39. Plaintiff's medical expenses total $7,367.49. There is no evidence of continuing medical expenses.

40. Plaintiff's present life expectancy is 27.4 years. (N.T. 54)

41. As a result of plaintiff's injuries, he has undergone two operations. He has had two myelograms and two electromyograms performed on him. He has been admitted to the hospital on four separate occasions and has spent at least twenty days in traction. He has also been forced to wear a Knight spinal brace since July, 1968.

42. Plaintiff has suffered constant severe pain as a result of his accident and will continue to suffer such pain.

43. Plaintiff continues to suffer instances in which he feels a sudden intense pain in his lower back which causes him to collapse. (N.T. 157)

44. Plaintiff has a severe limp and is able to move around only with great pain.

45. A reasonable compensation for plaintiff's past pain and suffering is $50,000.

46. A reasonable compensation for plaintiff's future pain and suffering is $150,000.

## DISCUSSION

This case presents several issues of damages which require discussion. The first is whether we should reduce the amount of plaintiff's recovery because of his failure to undergo further surgery

in an attempt to alleviate the pain in his low back. We conclude that his recovery should not be so reduced.

 It is, of course, settled law that if injuries may be cured or alleviated by a simple and safe surgical operation, then refusal to sumbit thereto should be considered in mitigation of damages. Young v. American Export Isbrandtsen Lines, Inc., 291 F.Supp. 447 (S.D.N.Y. 1968); Lewis v. Pennsylvania R. R., 100 F.Supp. 291 (E.D.Pa.1951). This is not true, however, where the operation is a serious one, or one attended by grave risk of death or failure. *Lewis, supra.* A plaintiff has a duty to submit to reasonable medical treatment and the test of reasonableness is to be determined by the triers of fact. Ambrose v. Norfolk Dredging Company, 284 F.2d 802 (4th Cir. 1960).[1]

The record in this instant case clearly demonstrates that plaintiff has continuously submitted to reasonable medical treatment since he first sustained his injuries. He has already undergone two operations, one for the removal of a herniated cervical disc and the other an exploratory operation on his spine. Moreover he has never refused to submit to further surgery. His physician, Dr. Langfitt, while testifying that another exploratory operation to locate and remove a possible herniated disc might alleviate plaintiff's condition, also testified that he had never, prior to trial, advised plaintiff to have another operation. Consequently this is not a case where a plaintiff has refused to follow the advice of his physician. See Murphy v. American Barge Line Company, 169 F.2d 61 (3rd Cir. 1948), cert. den. 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406.

 The evidence also indicates that the proposed operation is of highly questionable value. In the first instance, such an operation would have only a 60 to 70% chance of being successful. (N.T. 280) Moreover, it would relieve his disc problem only at the L/5 level of the spine, and the likelihood exists that further surgery would be necessary in a few years to relieve disc problems at other levels of his spine. (N.T. 281) It is also not inconceivable that further surgery at this time could worsen plaintiff's condition. (N.T. 51, 104) Finally, an operation such as the one described would obviously be successful only in the event that plaintiff does, in fact, have a herniated disc. If, however, he is suffering from arachnoiditis, as appears likely, such an operation would not relieve his condition. (N.T. 243) Under these circumstances we do not find it unreasonable for plaintiff to decline to undergo further surgery.

Defendants have also attempted to show that plaintiff, although permanently disabled from his former occupation as head stevedore foreman, can mitigate his damages by obtaining other employment. It has been demonstrated that plaintiff, because of his condition and employment background is unsuitable for indoor employment. Defendants maintain, however, that he could obtain employment as a checker on the waterfront.

 The law requires of an injured party a reasonable effort to mitigate his damages. Isthmian S. S. Co. v. Jarka Corp. of Baltimore, 100 F.Supp. 856 (D.C.Md.1951). This includes a duty to seek reasonable alternative employment. Alexander v. Meiji Kaiun K.K., 195 F.Supp. 831 (E.D.La.1961), aff'd. Strachan Shipping Co. v. Alexander, 311 F.2d 385 (5th Cir. 1962). We believe that the course which defendants would have plaintiff follow oversteps the bounds of reasonableness.

 We have found no case which holds that a disabled plaintiff has a

---

1. It appears to the Court that federal law, and not Pennsylvania law is applicable to this issue in an Admiralty case. See Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

However the duty of an injured plaintiff to mitigate his damages is the same under Pennsylvania law. James v. Ferguson, 401 Pa. 92, 162 A.2d 690 (1960).

duty not only to obtain alternative employment which he is capable of performing, but also to prepare himself educationally for a job which he is not capable of performing at the time of his injury. Nor do we feel that such a rule is appropriate, especially in a case such as this where the plaintiff has been out of school for approximately thirty years and the amount of time that it would take him to complete the necessary schooling would be extensive. Accordingly, we conclude that plaintiff has no duty to obtain employment as a checker.

Finally, we are presented with the issue of the amount of plaintiff's loss of earnings for the years 1968 and 1969. After plaintiff was injured early in 1968, he returned to work with Northern Metal Company on several occasions. His W-2 forms for 1968 and 1969 show combined earnings of $22,087. Defendants contend that plaintiff's loss of earnings for those years should be the amount of his regular salary before the accident reduced by the amount which he actually earned. Plaintiff, however, contends that his loss should not be reduced by this $22,000 figure. While he does not specify the reason for this contention, it appears from the elicited testimony to be that, because plaintiff was unable to perform all of his prior duties when he returned to work, the money paid to him by his employer was actually a gift and therefore should not be reduced from the amount of his recovery.

■■ Under both federal and Pennsylvania law a *gratuitous* payment of wages by plaintiff's employer would not bar his right to recover for the loss of those wages. Hartnett v. Reiss Steamship Company, 421 F.2d 1011 (2nd Cir. 1970), cert. den. Grain Handling Co. v. Hartnett, 400 U.S. 852, 91 S.Ct. 49, 27 L.Ed.2d 90; Steeves v. United States, 294 F.Supp. 446 (D.C.S.C.1968); Layman v. Doernte, 405 Pa. 355, 175 A.2d 530 (1961). We conclude, however, from the facts of the instant case, that the salary paid to plaintiff after his accident was not a gift but rather compensation for his services. Consequently he may not recover this amount from defendants.

Plaintiff continued to work after his accident, and although his employment was interrupted by periods of hospitalization and treatment, he did not leave his position permanently until September, 1969, some nineteen months after the accident. Of his 1968–1969 income of $22,000, approximately $20,000 is attributable to the period after the accident. The length of time which plaintiff remained with Northern Metal Company after the accident and the large amount of income which he received indicate that the money was not a gift. We cannot conceive of plaintiff's employer's retaining plaintiff on its payroll for over a year-and-a-half and paying him approximately $20,000 as a mere gratuity. Moreover, the fact that plaintiff was not paid his salary at all times subsequent to his accident but only at those times when he in fact worked further supports the conclusion that he was being compensated for his services. Finally, plaintiff was discharged in November, 1969, on the basis of a medical report which stated that he was unable to perform the physical activities required of his position. It appears, therefore, that until that time plaintiff's employer was satisfied that plaintiff was sufficiently handling his job and was not being retained as a gesture of charity.[2] Plaintiff has also made reference to a $2,000 bonus which was paid him in December, 1968. Plaintiff had received a bonus each year since 1959, and in the absence of a showing that this bonus was significantly larger than that paid him during the years

---

2. Plaintiff testified that from November 3 to November 30, 1969, Northern Metal Company paid him the difference between his salary and the amount of workmen's compensation which he received. Although this was a gratuitously bestowed benefit, there is no evidence as to the amount of these payments and we are unable to consider them.

immediately preceding the accident we cannot conclude that it was anything more than a traditional compensation for services.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and of the subject matter of this action.

2. Liability has been admitted by defendant United States of America.

3. Plaintiff is not under a duty to submit to further surgery.

4. Plaintiff is not under a duty to seek employment as a checker on the waterfront.

5. The income which plaintiff received from his employer following his accident was compensation for his services and is not a proper source of recovery.

6. Judgment is entered in favor of plaintiff Charles Joseph McGinley and against defendant United States of America in the amount of $355,200.