THE CLEVELAND RY. CO. *v.* DURALIA.

(Decided December 10, 1928.)

*Messrs. Squire, Sanders & Dempsey,* for plaintiff in error.

*Messrs. Cull, Burton & Laughlin,* for defendant in error.

SULLIVAN, P. J.   This is a case where, in the common pleas court, damages for personal injuries were recovered by plaintiff, Stanley Duralia, against the Cleveland Railway Company, growing out of a collision between a street railway car and an automobile, occurring on January 11, 1926, while Duralia was driving in an easterly direction on St. Clair avenue, Cleveland, Ohio, and a car of the railway company was traveling westward, and it is sought to reverse on the ground that the plaintiff himself was guilty of such negligence as defeated recovery, that the court erred in refusing to direct a verdict for the defendant, that the verdict is clearly and manifestly against the weight of the evidence, and that the court further erred in its instructions to the jury upon the doctrine of "last chance." And it is claimed there are other errors apparent upon the face of the record.

Coming first to the question whether the judgment is clearly and manifestly against the weight of the evidence, an examination of the record discloses the fact that the testimony concerning the collision is widely divergent. Two views at least are ascertainable from the record, and there is credible evidence of a substantial nature which supports the verdict of the jury and the judgment of the court. Upon this assignment of error it does not appear from the record that the judgment below is so violent in its nature that it either shocks the senses or

denotes a misapprehension of the law or facts on the part of the court or jury. These conclusions preclude a reversal on this ground, under the following authority, as well as under many others of a similar nature:

*Painesville Utopia Theatre Co.* v. *Lautermilch,* 118 Ohio St., 167, 160 N. E., 683: "Whenever, from conflicting evidence of the same witness or of different witnesses, it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function. It is reversible error for the court to invade that province of the jury."

Therefore, it is our conclusion that the verdict is not clearly and manifestly against the weight of the evidence, and thus there is no foundation for this assignment of error.

Approaching the question of the doctrine of "last chance," in order to ascertain whether there is any merit in the assignment of error that under the record this principle of law does not appear, we examine the record, and find that, at the time of the collision, the street car in the eastern suburbs of the city was bound west toward the public square on a single track which was laid south of the center line of the street, and this situation existed because of a contemplated extension of the double tracks eastward in the suburbs; but, at the time of the accident, the northern tracks had not yet been laid or constructed, and this is the reason why the single tracks

already laid were occupying a portion of St. Clair
avenue which was south of the center thereof, and
which at that time constituted a part of the highway
which was used for eastbound traffic. At a certain
point west of the place of the collision the single
track joined double tracks already laid and in oper-
ation, with which the single track connected for
westbound traffic, and was so to continue to do until
the construction of the parallel track of the contem-
plated extension.

The time of the accident was about 12:30 a. m.,
and it is conceded that there was a headlight on the
street car as well as headlights upon the automobile.
The evidence is conflicting as to whether just prior
to and at the time of the collision the street car was
at a standstill or moving on its course downtown,
and the same situation applies as to the automobile.

There is credible evidence in the record that the
plaintiff below, while driving on the single track in
question, finding it impossible to leave the tracks
upon which he was driving and to turn aside from
the street car, stopped his automobile in order to
avert a collision, and the street railway by the rec-
ord contends, with credible evidence, that this is
untrue, and that the street car, instead of moving
on its course to the west, was standing still, and that
Duralia negligently ran into the street car; and
the street car itself, by photographs, is offered in
evidence to show that the marks of the collision were
on the left of the front bumper of the western end
of the car, and therefore it is claimed that this situa-
tion clearly disproves the claim of plaintiff below
that there was a head-on collision. In other words,
the plaintiff and defendant in the trial below were

at war with respect to the actual situation immediately prior to and at the time of the accident, each side asserting negligence against the other. From this set of circumstances it seems clear that there was created a situation which resulted in the inquiry whether, notwithstanding the charge of negligence against plaintiff below, the motorman as a last resort could have averted the collision and thus saved the plaintiff from his injuries.

It is argued by able counsel for the Cleveland Railway Company that the doctrine of "last chance" is not applicable because it was not alleged in the petition, and does not appear from the evidence, but we take the view that this is unfounded both as to the allegations of the petition and the evidence in the case, even though it does not clearly appear that it was originally intended to make the doctrine of "last chance" a vital ground for recovery.

According to the theory of defendant below, there is some justification for the claim that the doctrine of "last chance" does not exist, but it must be remembered that this question cannot be determined without taking into consideration the theory of plaintiff below as it appears from the allegations of the petition and from the evidence, and, in order to ascertain the question, a narrow construction should not be given either the allegations of the petition or the evidence in the case. It is the situation that was created by at least the plaintiff's theory in the case that gives birth to the doctrine of "last chance," because the facts would make it clear to a layman that a natural inquiry would arise therefrom as to whether the motorman, with the headlights of the automobile in front of him could have stopped his

car in time to avert the disaster by the exercise of ordinary care.

Upon this point, and adverting to the second specification of negligence in the petition, we find that as to that pleading the claim as to the principle of "last chance" is not well founded, for from this paragraph charging negligence it is clearly deducible that the doctrine is raised, and we find this status equally applicable to credible evidence in the case. The specification to which we refer is as follows:

"For that defendant's motorman saw or in the exercise of ordinary care could and should have seen the automobile which this plaintiff was driving, the same being under a street arc lamp at this point, by the exercise of ordinary care, for him to have brought the street car to a stop, thereby avoiding said collision, yet defendant's motorman failed to exercise such ordinary care but continued to go forward at a high rate of speed although plaintiff brought his automobile to a stop and was at a standstill when the street car ran into him."

The authority of *West, Recr.,* v. *Gillette, Admr.,* 95 Ohio St., 305, 116 N. E., 521, in our judgment is applicable to the record in this case, as the interpretation by the Supreme Court of the doctrine of "last chance" is obviously applicable to the case at bar.

Under the record in the case we think it is apparent that, after the determination of the negligence of both parties, the inquiry might naturally arise whether the conduct of the motorman, after he had discovered the danger of the driver of the automobile, was capable of translation into the exercise of ordinary care. Hence it is our judgment

that there is no prejudicial error with respect to this assignment.

Again it is argued that the plaintiff below was negligent, inasmuch as he only had one arm to operate the automobile, and that, under the circumstances of the case, such as the middle of the night, slippery tracks caused by the falling of snow, and the deficiency in the loss of one arm, he ought not to have attempted to operate his car. That was a fact to be determined by the jury, and, inasmuch as there was credible evidence to show that, notwithstanding the loss of one arm, he was capable of manipulating and operating his car, we are precluded under the authorities from reversing the judgment on this ground, because to do so would be to invade the province of the jury, for that tribunal had for its judgment upon this point the testimony of the plaintiff that for years he had with one arm successfully operated automobiles upon the public highway. We see no prejudicial error here.

A significant fact in this case is that the plaintiff, even though in the groove of the tracks while he was traveling east, was lawfully upon the highway, and that his rights thereto were equal to those of the defendant below. We cannot escape the further fact, in the consideration of this case, that the motorman of the street car was traveling westward on territory south of the center line of the street, devoted exclusively, in general, to eastbound traffic. Naturally and inevitably this circumstance at the time of the collision should have aroused the attention of the motorman to this disarrangement of the traffic, and to the fact that this circumstance alone created a situation, due largely to the necessity

of the occasion, that imposed care upon the plaintiff in error, in order to carry its passengers and enjoy the fruits of its franchise.

Therefore there is no negligence inherent in the charge that the driver of the automobile was upon the tracks and it makes no difference in our judgment as to his reason for driving in the tracks instead of upon the highway immediately south thereof, and the situation to be determined by the jury was just the same as if the automobile driver was off the tracks instead of driving thereon.

Of course, it must be understood that the exercise of ordinary care would be determined with more scrutinizing care where the driver was on the tracks, instead of the road, and, correspondingly, the fact arises that driving upon the track instead of upon the road would demand from the motorman the duty of being alert to the situation of danger which immediately confronted him, and which he could not avert, if the street car and the automobile attempted to pass each other while on the same track. Reasoning of this nature we find very applicable to the case at bar in the light of the entire record, and we find circumstances of a similar nature, giving rise to the same character of analysis, in *Swift & Co.* v. *N. Y. & Q. C. Ry. Co.*, 136 App. Div., 34, 120 N. Y. S., 203, from the opinion of which we give an excerpt from page 204 of 120 N. Y. S. (136 App. Div., 35):

"This case differs from any to which my attention has been called (1) by the presence of the light at night, which was a self-protection employed by the driver, and an unmistakable signal to the motorman of the presence of the wagon on the track;

(2) by the fact that the motorman gave no account of himself whereby he may be acquitted of gross negligence in running down the team. There is no phase of negligence law that ignores this consideration. Had the driver been a trespasser on the tracks of a steam railway, the duty would rest on the engineer of a train seeing him to try to save him. But here the driver was on a public highway where by immemorial right he might travel, he was on tracks that overlaid a space in the highway where he had every right to go, and where the icy condition of other parts of the highway compelled him to go. If he did not keep his eyes turned backward with sufficient continuity, or so repeatedly, as to accommodate his safety to the defendant's cars, that did not excuse the defendant's presumably reckless oncoming, with the lantern shining full in the face of the motorman. The law is mindful of cattle trespassing on a railway track. * * * It takes heed of human beings heedlessly exposed there. * * * In the case at bar the defendant's motorman could have seen the lighted lantern in its track a long way ahead, the law required him to watch the track for teams on the track, the light was drawing nearer to his vision, and the presumption is that, looking as he ought to have looked, he saw it and dashed into it.''

Applying these principles and logic, it is our conclusion that, from aspects of the case deducible from the record, the conduct of the driver of the automobile does not denote such negligence, by inference or otherwise, as would preclude a recovery, especially remembering that it is the exclusive province

of the jury to adopt whatever theory with respect to the negligence of either party the facts justify.

It is further charged that the court committed error in instructing the jury upon two of the second specifications of negligence, to wit, excessive speed and failure to give signals. Of course, it is apparent from every aspect of the record that the driver of the automobile was aware of the fact that a street car was in front of him, and that is the reason he made a vain attempt, according to credible evidence, to leave the tracks on the south part of the highway, and thus obviate the collision. Consequently, any instruction upon this specification of negligence could not be prejudicial, because the actual facts, being conceded, were so patent to the jury that they could not be misled from the truth even though the court charged thereon.

Inasmuch as there were allegations in the petition charging failure of warning, it was at least discretionary with the court under the state of the record to give the instructions, because, generally speaking, it becomes the duty of the court to lay the groundwork of the case by reciting the allegations, and it cannot be said that the question of lack of warning was not inferentially, or by circumstance, at least, in the case. We think the same reasoning applies to the question of speed, but let it be admitted for the purpose of argument that under the record those two specifications of negligence had become valueless. We believe the case of *Sites* v. *Haverstick*, 23 Ohio St., 626, is authority for the conclusion that the court committed no prejudicial error in the respect discussed. From a reading of the syllabus in that case there is no conclusion to

which we can come except that there was no error; for the reason that there is nothing in the record to show that defendant below by interrogatory, special finding, or otherwise, made any request of the court that would compel the jury to return such a verdict as would determine the grounds upon which it based it. The syllabus in that case is as follows:

"1. Where the jury, by their verdict, 'find the issues joined in the cause' in favor of one of the parties, this is to be taken as a verdict finding each and all of the issues therein for such party.

"2. In such case, if the issues are such that a finding of either of them in favor of the successful party entitles him to the judgment rendered, the judgment will not be reversed for error in the instructions of the court relating exclusively to the other."

This was affirmed in *State, ex rel.,* v. *Hills,* 94 Ohio St., 171, 113 N. E., 1045, L. R. A., 1917B, 684, from which we quote paragraph 3 of the syllabus, as follows:

"Where, upon the issues made by several defenses to a claim sued upon, a general verdict is found for the defendant, it not being disclosed by answers to interrogatories or otherwise upon which issue the verdict was based, and the record disclosing no error touching either the presentation or submission of at least one of such issues, a finding upon which in favor of the prevailing party would justify a general judgment which is rendered, error of the trial court in the submission of other issues will be disregarded."

Therefore, in the above respects, we find no prejudicial error.

Counsel for defendant below contend that, according to the authorities, *Cincinnati Traction Co.* v. *Williams,* 115 Ohio St., 124, 152 N. E., 30, and *Cincinnati Traction Co.* v. *Eyrich,* 25 Ohio App., 546, 159 N. E., 484, the court committed error upon the question of the weighing and preponderance of the evidence, by instructing the jury as follows:

"Now, the plaintiff having filed this lawsuit, the law places the burden of proof on the plaintiff to establish his case by a preponderance of the evidence to entitle him to a verdict at your hands. And by a preponderance of the evidence is meant the greater weight of the evidence, that is to say, when you weigh the evidence *offered* on behalf of plaintiff's side of the case and the evidence *offered* on behalf of defendant's side of the case, if you can say that the evidence of one side outweighs that of the other, such side has the greater weight or the preponderance of the evidence.

"Now, then, if you fail to find from a preponderance of the evidence that the defendant was negligent in one or more of the particulars set forth in the plaintiff's petition, then you would not proceed further with this case but return a verdict for the defendant. If, however, you find from a preponderance of the evidence that the defendant was negligent in one or more of the particulars charged, then you will proceed and determine whether or not such negligence was the proximate cause of the injuries of which the plaintiff complains."

The word "offered" as noted in the first part of the charge above quoted is the main objectionable feature, but it will be seen by reading that portion of the charge in connection with the second para-

graph of the charge, above quoted, that the court escaped the situation which is complained of and upon which counsel for defendant below rely as supporting their views upon the authority of the *Williams case, supra*. We think, however, from an examination of the question, that the following proposition of the syllabus from *Travelers' Ins. Co.* v. *Gath,* 118 Ohio St., 257, 160 N. E., 710, is sufficient authority for declaring that there is no prejudicial error in the charge complained of:

"2. The word 'offered' in a charge is not prejudicial where the record does not disclose that any evidence was offered by either party in the presence of the jury and thereafter rejected by the court, and where it does not appear that the word 'offered' refers to its having been tendered by either party, but rather refers to a tender for or against disputed propositions."

In the charge of the court in *Insurance Co.* v. *Gath, supra,* the same word "offered" was used by the court. In the case at bar there is no situation in the record that would create any confusion in the minds of the jury whatsoever as to what evidence was meant by the court in the use of the language employed.

The record in the case does not disclose that any substantial or other part of the record is divided from the balance because of a ruling which excluded certain testimony presented and allowed certain other testimony. There is no basis for any such classification, no such question was raised, nothing appeared in the testimony to create such a thought in the minds of the jury, and it must be remembered that, under the law at least, a jury is composed of

intelligent persons chosen with great care under processes of the law, and is a body which is to be credited with at least that amount of knowledge which belongs to the ordinary person, and, even if there appears from the record a distinction between evidence offered and not submitted and evidence offered and submitted, the jury of necessity would be capable in its capacity to determine that which the court has excluded from that which the court has allowed. Too often it is presumed that the jurors are infants and incapacitated to understand the ordinary procedure in a court of law that involves nothing except a relation from the witness stand of events. Too often is there a resort to the other extreme, when it is argued that a jury of laymen would instantly see the legal distinction between the use by a court of the word "offered" and the use of the word "presented," as they relate to the testimony of witnesses. The natural conclusion is that the distinction would not be discernible, and that the jury would grapple the facts which were submitted and refuse the consideration of facts under prohibition from the bench. So we think there is no prejudicial error in this claim, and, from an examination of the whole record, we are of the opinion that there is no prejudicial error therein, and that substantial justice has been done. Thus holding, the judgment of the common pleas court is affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.