Ropele *v.* Stewart et al., Appellants.

524

Argued November 11, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*R. Wallace Maxwell,* for appellants.

*J. Salem Flack,* with him *John I. Hook, Jr.,* and *Scott and Hook,* for appellee.

OPINION BY WOODSIDE, J., January 21, 1958:

This is an appeal from the order of the Court of Common Pleas of Greene County granting a new trial after a jury found for the defendants in a trespass action growing out of a motor vehicle collision. The case has been tried twice. The first time the jury was unable to agree.

The evidence shows that the accident occurred during daylight along a dry country road paved to a width of from 14 feet 9 inches to 15 feet 3 inches. Beyond the paved portion there were gravel or grass berms of

an estimated width of three feet. The plaintiff was operating a 1936 Ford four door sedan. The defendant, Stewart, was operating a 1946 Ford dump truck on the business of its owner, Isaac Lewis, the other defendant. The vehicles were proceeding in opposite directions.

The plaintiff testified that he was operating his automobile at about 25 miles per hour, on his side of the highway, talking to his passenger, Nina Assad, but watching the road ahead. He had his left elbow resting on the door, and his left hand grasping the drain on the roof of the car. Although his arm was outside of the car, he testified that it was "inside the running board." He noticed the defendants' truck approaching him when he was a "hundred and some feet away." He testified that the truck was then partly on his side of the road, and that it continued toward him in a straight line, without changing its position in relation to the center of the highway. The plaintiff did not reduce his speed, nor pull in his arm, but continued to drive with one hand. He pulled the right wheels of his automobile onto the berm, and said he thought he was "far enough off of the road to prevent the accident" and "didn't think there was going to be one." But the truck and the automobile did sideswipe each other, and the plaintiff's arm was mangled so badly that it had to be amputated halfway between the shoulder and the elbow. The truck stopped within a few feet of the point of impact, but the plaintiff continued driving for over 1000 feet, until he was around a curve from the place where the accident happened. There he stopped and received assistance from passing motorists. His passenger corroborated his testimony.

The defendants' truck body was 7.8 feet wide. This was within the legal limits but was too wide to be operated entirely on its side of the paved portion of the

road unless part of it extended over the berm. It was travelling between 20 and 30 miles per hour. When Stewart first saw the automobile approaching about 300 feet to 500 feet away, he said that part of his truck was left of the center of the road, but as he approached the automobile he pulled it over to the right, so that before he got to the car the right front wheel of his truck was moving along the edge of the highway. Because the inside rear dual wheel is in line with the front wheel, the outside rear dual wheel and part of the truck body beyond it was off the paved highway, according to his testimony. He said that when he was about to pass the automobile his truck was entirely on his side of the highway, and that there was plenty of room for the plaintiff to pass. He said that when the vehicles were about 100 feet apart, the plaintiff "drove off or fell off or dropped" on to the berm and continued there until he was "maybe twenty-five feet in front of me, or so, or right beside me" and then he pulled back on to the paved roadway and came into the side of the truck. There was corroboration of defendant Stewart's testimony.

The only material difference in the testimony of the two operators of the vehicles is that the plaintiff says he was driving his automobile on the berm at the time of the accident and that the defendants' truck was not entirely on its side of the highway, and Stewart says that his truck was being operated entirely on his side of the highway and that the plaintiff pulled his automobile off of the berm into the side of the truck.

Defendant Lewis, who was riding in the truck, testified that he saw the plaintiff's automobile drop off the edge of the road and start to swerve. He could not see the wheels of the automobile coming back onto the road, but he could see the car coming toward the truck.

Since the jury found for the defendants, the testimony and all reasonable inferences therefrom must be considered in the light most favorable to the defendants. This rule applies to all of the evidence, not merely that adduced on behalf of the party winning the verdict. *Virden v. Hosler,* 387 Pa. 1, 5, 127 A. 2d 110 (1956).

We must, therefore, accept the defendants' version of what happened and not that of the plaintiff. There is other evidence supporting the defendants' position and throwing great doubt upon the credibility of the plaintiff and his witness.

There is testimony that the plaintiff's passenger said that she did not remember seeing the truck, and did not know how the accident happened. The plaintiff told a state policeman a day or two after the accident, "I don't know what happened, I don't know if I hit the truck or it hit me, in fact, I didn't even see the truck so I can't say who was on the wrong side of the road." A day or two before plaintiff was discharged from the hospital, he again told the officer that he confirmed the above statement. There is also evidence that he made similar statements to the defendants. The plaintiff did not deny making these statements to the officer, although he did take the witness stand immediately after the officer and denied making similar statements to other people.

A recital of the above testimony indicates that the question of the defendants' negligence as well as the plaintiff's contributory negligence was a jury question. If the jury believed the defendants, as it had a perfect right to do, they were not guilty of negligence. If the jury believed the testimony concerning the statements of the plaintiff and his witness that they did not know how the accident happened, it was justified in rejecting the only evidence of the defendants' negligence.

It was also for the jury to say whether or not the plaintiff convicted himself of contributory negligence by his own testimony. The plaintiff testified that he saw this wide truck on this narrow road *more than* a hundred feet away approaching him partly on his side of the road. Without taking his left arm from outside of the automobile or placing his left hand on the steering wheel, he turned onto a grass or dirt berm and continued on it without reducing the speed of his car in the least.

The jury might well have found that a reasonably prudent person driving a 1936 Ford on a narrow road when faced with an approaching truck wider than half of the paved portion of the highway, would have taken two hands to steer his automobile and would have reduced its speed, and that the failure of the plaintiff to do this contributed to the accident.

The jury could have found the plaintiff guilty of contributory negligence on the basis of his own testimony. See *Kovalish v. Smith*, 357 Pa. 219, 222, 53 A. 2d 534 (1947) ; *Thomas v. Geo. W. Boyd Co.*, 311 Pa. 267, 269, 270, 166 A. 767 (1933) ; *Brenton v. Colbert*, 305 Pa. 277, 157 A. 619 (1931) ; *Cleveland R. Co. v. Duralia*, 30 Ohio App. 389, 165 N.E. 358 (1928).

The court below granted a new trial because, among other reasons, it was "not convinced that (the verdict) was amply supported by the credible testimony, or corroborated by the physical facts and the photographs." It went into great detail to apply the "incontrovertible physical facts" doctrine.

Where the testimony of witnesses is needed in order to apply the incontrovertible physical facts to the issue in the case the rule itself is inapplicable. *Callahan v. A. Wishart & Sons Co.*, 365 Pa. 498, 502, 76 A. 2d 386 (1950) ; *Streilein v. Vogel*, 363 Pa. 379, 69 A. 2d 97 (1949). Incontrovertible physical facts are nev-

er established by oral evidence as to position of movable objects. *Hostetler v. Kniseley,* 322 Pa. 248, 250, 185 A. 300 (1936) ; *Gregg v. Fisher,* 377 Pa. 445, 450, 105 A. 2d 105 (1954). Even photographs do not bring cases within the rule. *Kane v. Scranton Transit Co.,* 372 Pa. 496, 498, 499, 94 A. 2d 560 (1953) ; *Heimbach v. Peltz,* 384 Pa. 308, 311, 121 A. 2d 114 (1956).

As was said in *Reiser v. Smith,* 332 Pa. 389, 393, 2 A. 2d 753 (1938) "We do not find in this record any 'incontrovertible physical facts' which indelibly stamp falsity on the testimony offered in behalf of (defendants), nor do we find it physically impossible for the accident to have happened in the manner described by the (defendants) and (their) witnesses."

The doctrine certainly has no application in a case like the one before us. *Boyko v. Mrkonic,* 181 Pa. Superior Ct. 603, 124 A. 2d 403 (1956).

Trial courts should apply the incontrovertible physical facts rule with caution. We have examined 17 cases in which the Appellate Courts of this Commonwealth have dealt with the rule during the past ten years, and in every one the rule has been held inapplicable to the facts.

It is argued that a piece of bone, flesh and blood, presumably from the plaintiff's arm, and seen on the highway hours after the accident, indicated on which side of the road the collision took place. Under the circumstances this evidence has little, if any, probative value. See *Kozemchak v. Garner,* 163 Pa. Superior Ct. 328, 331, 61 A. 2d 375 (1948).

The plaintiff was asked on cross-examination "Had you had anything to drink on this day?" Upon objection the trial judge ruled that the objection should be sustained unless the defendants were able to show that the plaintiff was under the influence of intoxicating

liquors, and that his intoxication was the proximate cause of the accident. At side bar the defendant offered to prove only that within a half hour of the accident the plaintiff "did consume intoxicating beverages in some quantity." The trial judge then sustained the objection, the question was not answered and no further reference to the plaintiff's drinking was made throughout the trial.

Evidence that the operator of a vehicle involved in an accident was under the influence of intoxicating liquor is admissible to show a circumstance from which carelessness of the operator may be inferred. Standing alone, however, the odor of liquor does not prove intoxication. *Critzer v. Donovan*, 289 Pa. 381, 137 A. 665 (1927). Nor does drinking intoxicating liquors in itself, prove unfitness to drive. *Balla v. Sladek*, 381 Pa. 85, 93, 112 A. 2d 156 (1955). Because evidence of these, standing alone, does not. *prove* intoxication, and might be prejudicial in a case where a driver had been drinking intoxicating liquor but was not under its influence, the courts have held that such evidence is not admissible unless accompanied by additional evidence that the operator was under the influence of intoxicating liquor. *Fisher v. Dye*, 386 Pa. 141, 148, 125 A. 2d 472 (1956) ; *Commonwealth v. Stosny*, 152 Pa. Superior Ct. 236, 239, 240, 31 A. 2d 582 (1943). If there is evidence other than the odor of alcoholic beverage on the driver's breath and the mere fact that he was drinking intoxicating beverages, then the evidence of odor and drinking is admissible along with the other evidence. *Risbon v. Cottom*, 387 Pa. 155, 159, 127 A. 2d 101 (1956) ; *Commonwealth v. Rosenberger*, 183 Pa. Superior Ct. 401, 405, 132 A. 2d 359 (1957).

An examination of the above cases, along with others which referred to the admission of such evidence, nowhere suggests that the mere asking of a ques-

tion such as here asked of the plaintiff is ground for granting a new trial.

Furthermore, the plaintiff did not request the withdrawal of a juror. He cannot take his chances on receiving a verdict, and upon failing, obtain a new trial on the basis of a question which he did not consider sufficiently prejudicial to merit the request for the withdrawal of a juror.

In its opinion the court below said "it may be that our failure to adequately charge concerning contributory negligence misled the jury." It admits that this standing alone would not be ground for a new trial. By failing to follow the language of the Appellate Courts on contributory negligence and other required instructions to the jury the trial judge did not charge as clearly and accurately as he might have. It seems to us, however, that the deficiencies as a whole were not prejudicial to the plaintiff, and were not basic. If prejudicial, the charge concerning contributory negligence was more prejudicial to the defendants than to the plaintiff. As we pointed out above, contributory negligence was an important part of this case. That the trial court was not of the same opinion is indicated not only in its charge, but also in its opinion in which it said "There was nothing in (the plaintiff's) operation of his automobile to indicate lack of ordinary care."

This case has already been tried twice. The plaintiff was given a fair trial. The question was for the jury and not the court. There is nothing in the record to warrant a third trial.

Although appellate courts generally support the action of a trial court in granting a new trial, they should not entirely abdicate their reviewing functions in such cases. This Court has the duty to determine from the record whether or not the jury's verdict was so con-

trary to the evidence as to shock one's sense of justice and to make a new trial imperative. *Decker v. Kulesza,* 369 Pa. 259, 263, 85 A. 2d 413 (1952) ; *Jones v. Williams,* 358 Pa. 559, 564, 58 A. 2d 57 (1948).

The order granting a new trial is reversed, and it is directed that judgment be entered on the verdict.