Krusinski *v.* Chioda, Appellant.

Argued April 22, 1958. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

Before KENNEDY, J.

George M. *Weis*, with him *Weis & Weis*, for appellant.

Theodore M. *Tracey*, with him *Edward O. Spotts*, for appellees.

OPINION BY WOODSIDE, J., June 19, 1958:

This is an appeal by the defendant from an order of the Court of Common Pleas of Allegheny County granting the plaintiffs' motions for a new trial on the ground of inadequacy of the verdicts in an automobile collision case.

The jury awarded $950 to Joseph N. Krusinski, who became of age between the time of the collision and the time of the trial, and $2000 to Richard Krusinski and his mother, Anna. The trial judge properly refused to accept the $2000 verdict and returned the case to the jury, which then divided this sum, $500 to the mother and $1500 to Richard.

The stipulated damage to Joseph's automobile was $753. He had doctor bills in the amount of $79, and pharmacy and hospital bills in the amount of $5.25, bringing the total to $837.25. In addition to the above, he claimed "immediate earning loss of $72," and "subsequent earning loss of $250," as well as damages for pain and suffering.

Richard's hospital expenses were $222.60 and his doctors' bills $285. He suffered a broken jaw, and there was testimony that it would be necessary to have repairs made to his mouth after he matured, the cost of which was estimated at $300. There was also a claim for loss of earnings in the amount of $100.

The collision occurred shortly before midnight, September 21, 1954, on Irvine Street in the City of Pittsburgh. Irvine Street is a four lane street with a double trolley track in the center lanes.

Joseph, then 18 years of age, while driving his automobile home from Hazlewood, picked up his 14 year old brother, Richard. According to Joseph's testimony, as he approached his home on the right side of the road in the direction in which he was travelling, he stopped at the curb to let several cars pass. It was his intention to park his automobile in front of his home on the sidewalk with the car facing in the opposite direction from which he was coming.

In order to turn his car completely around, he drove across the road to within 2 or 3 feet of the curb on the opposite side of the street from his home. Then he made a sharp turn to the right, intending to enter the sidewalk at a point where there was a break in the curb for a private driveway. While heading into the driveway, he noticed that he could not clear another car which was parked on the sidewalk. He, thereupon, stopped his car on the highway facing the curb and blocking both lanes of traffic coming from Hazlewood. According to one of his own witnesses, he remained in this position long enough for an automobile to travel several blocks. While in this position, he was struck by the defendant who was driving his own automobile from the direction of Hazlewood. Joseph was thrown out of the car, and Richard was pinned in it so that he was not extricated therefrom for approximately an hour. There is testimony of others which indicated that the collision occurred in substantially the manner described above.

Joseph S. Doyle, however, a completely disinterested witness who impressed the trial judge as "intelligent," testified that as he was entering Irvine Street shortly before the accident he saw the plaintiff and defendant racing at a very high rate of speed, and that expecting an accident, he followed them, driving faster than he normally does in order to see what would hap-

pen. He said that the accident was caused by Joseph turning his car to the right in front of the defendant.

The jury could have found Joseph guilty of negligence under either story.

Joseph and the defendant, who was 21 years old, were lifelong friends. There was no apparent reason for Doyle to fabricate or even color his testimony. The jury could have found that Joseph and the defendant were racing, and that Richard was a willing participant, in which case they could have found against all of the plaintiffs.

On the other hand, the jury could have found from the testimony presented by the plaintiffs that Joseph was negligent. He deliberately blocked two lanes of a busy highway at night by permitting his car to stand sideways on the street. Although Joseph's automobile's lights were on he was so nearly at right angles to the curb that only the reflection from the lights was likely to be seen by approaching traffic. There were street lights in the vicinity, but their light would make only more difficult the seeing of the reflected lights from Joseph's car. Of course, the defendant should have seen Joseph's car in time to stop, and the evidence as a whole establishes that he was guilty of negligence under either version, but the negligence of the defendant does not exonerate Joseph from negligence on his part. It seems to us that a reasonably prudent man would, if at all possible, avoid getting his automobile crosswise in the street, blocking two lanes of a busy highway after dark, especially when he could not move forward without first backing across the other lanes of traffic. Joseph could have avoided this dangerous maneuvering either by going over the curb onto the sidewalk, facing his car in the same direction he drove up to his home, or he could have gone further down the street, turned around, and approached his home

from the opposite direction in which case he would have been able to enter the driveway without stopping on the highway.

We have carefully reviewed all the evidence, including the exhibits, and entertain no doubt that a jury could have brought in a verdict against Joseph which would have been fully justified by the evidence. Under Joseph's theory of the collision, Richard probably could not have been guilty of contributory negligence, but Joseph was made an additional defendant, and the verdict in favor of his brother could have also been found against Joseph.

It is clear to us that this was a compromise verdict. As stated by Justice BELL in *Karcesky v. Laria,* 382 Pa. 227, 234, 114 A. 2d 150 (1955) "The doctrine of comparative negligence, or degrees of negligence, is not recognized by the Courts of Pennsylvania, but as a practical matter they are frequently taken into consideration by a jury. The net result, as every trial judge knows, is that in a large majority of negligence cases where the evidence of negligence is not clear, or where the question of contributory negligence is not free from doubt, the jury brings in a compromise verdict. Moreover, it is important to remember that neither a jury nor a judge who sees and hears the witnesses have to believe everything or indeed anything that a plaintiff (or a defendant) or his doctor, or his other witnesses say, even though their testimony is uncontradicted."

Where, as here, there is a strong doubt that the preponderance of the evidence is with the plaintiffs and the verdicts rendered are substantial, it would be "just as likely, or more likely, that the granting of a new trial would constitute an act of injustice to the defendant rather than one of justice to the plaintiff." *Carpenelli v. Scranton Bus Company,* 350 Pa. 184, 188, 38 A. 2d 44, 46; *Patterson v. Palley Mfg. Co.,* 360 Pa.

259, 268, 61 A. 2d 861 (1948) ; *Alleva v. Porter,* 184 Pa. Superior Ct. 335, 340, 134 A. 2d 501 (1957).

Although the verdicts here were not high, they were substantial, and have a reasonable resemblance to damages which were proven. In such case it is not the function of the court to substitute its judgment for that of the jury. *Mohler v. Worley,* 179 Pa. Superior Ct. 56, 60, 116 A. 2d 342 (1955) ; *Perzak v. Coulter,* 171 Pa. Superior Ct. 475, 478, 479, 90 A. 2d 256 (1952).

If the courts were to hold that a jury *must* believe the testimony of the plaintiff and his witnesses concerning injuries, there would be no way for a defendant to protect himself against fraudulent or exaggerated claims. *Kirby v. Carlisle,* 178 Pa. Superior Ct. 389, 394, 116 A. 2d 220 (1955).

Joseph Krusinski was not seriously injured. He was walking around and arguing with the defendant immediately after the accident, and although taken to the hospital, was discharged after being there only a few hours. Concerning his loss of work he testified, "the best I could say is three or four days."

Richard was more seriously injured. As stated by the court below, "Richard received multiple bruises in the automobile crash on his chest, arms and legs and also sustained a broken lower jaw. To set the fracture it was necessary to apply wires around his teeth which were locked and immovable for many days. He suffered extreme pain, distress and annoyance and could only take a liquid diet, sucking the nourishment through a straw between his closed teeth." There was evidence that some of the teeth became loosened, and that when he reaches full maturity a number of them will probably have to be removed and a removable plate substituted in order to get a proper bite. The doctor testified, however, that "very excellent results"

were obtained with the fracture. Richard was back in school three weeks after the accident.

Although appellate courts generally support the action of trial judges in granting new trials, they should not entirely abdicate their reviewing functions. *Ropele v. Stewart*, 185 Pa. Superior Ct. 522, 531, 137 A. 2d 895 (1958).; *Decker v. Kulesza*, 369 Pa. 259, 263, 85 A. 2d 413 (1952).

Under the circumstances of this case, we think that the court below abused its discretion in granting a new trial.

Order reversed and judgments are to be entered on the verdicts.