## Padula, Appellant, v. Godshalk.

Argued December 18, 1959.  Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*John B. O'Brien,* with him *Herbert Fishbone,* for appellant.

*A. Albert Gross,* with him *Gross & Herster,* for appellee.

OPINION BY WATKINS, J., June 15, 1960:

This is an appeal from the judgment of the Court of Common Pleas of Northampton County, entered on the verdict of a jury in favor of Frank Padula, plaintiff-appellant, and against Vernon Godshalk, defendant-appellee; and the refusal to grant a new trial on the ground of the inadequacy of the verdict.

Frank Padula and Michael Padula brought an action in trespass against Vernon Godshalk for personal injuries sustained by Frank Padula, and property damages to a motorcycle owned by Michael Padula.

This action was severed and Frank Padula was named an additional defendant. Vernon Godshalk counterclaimed against Michael Padula, alleging agency, but after verdict rendered, the counterclaim was abandoned.

The three cases were tried together. In the Frank Padula action, the jury rendered a verdict in his favor, in the sum of $1638; in the counterclaim, the jury returned a verdict in favor of Michael Padula; and in the severed action, the jury returned a verdict for Michael Padula in the amount of $400. A motion for judgment non obstante veredicto, filed by the appellee, and a motion for a new trial for inadequacy, filed by the appellant, were dismissed by the court below and judgment entered on the verdict. The only question before us, on this appeal, is the denial of a new trial.

On July 16, 1956, Frank Padula was employed as a farm laborer by a partnership composed of his mother and three brothers, operating two farms. These farms have been described as the North farm and the South farm. In addition to Frank, there was another brother, James, employed by the partnership.

On the day of the accident Frank was working on the South farm with his brothers making bins for the storage of grain. Shortly before 4:00 p.m. the brothers left the South farm to go to the North farm. According to the story of the appellant and his witnesses, Michael and Joseph left first in an automobile, followed by Samuel, in another automobile and finally by Frank, on a motorcycle, owned by Michael. As they left, the motorcycle operated by Frank was estimated to be 300 to 600 feet behind the car operated by Samuel. The distance between the two farms is about one and one-quarter miles and the road between the farms is a macadam highway, 14 to 15 feet wide, with grass growing along the edge of the macadam. The weather was

clear, the sun was shining, there was clear vision and the road surface was dry.

The appellant's evidence was to the effect that the appellee's flat-bottomed truck was being driven on the wrong side of the highway so that it was occupying all but two feet of the east side of the road which was the right side for the motorcycle. The appellee was forced to swerve to the west side of the highway and the appellant to drive his motorcycle off on the grass of the east side. The front of the motorcycle collided with the left rear wheels of the truck, Frank flew over the handle bars and fell to the grass beside the highway. The appellee stopped his truck on the west side of the highway, with his right wheels off the highway and his left wheels on the macadamed surface. The speed of the appellant's motorcycle was estimated by his witnesses as 25 to 30 miles per hour. There was evidence of conversations between Frank and Vernon, on the part of the appellant, that the appellee admitted he was on the wrong side of the road and did not know what happened. This was controverted by the appellee. The appellee's version of the accident differs substantially from that of the appellant. He testified he was proceeding south on the highway, at about 15 miles per hour, when he came to a curve to the left. He then saw the plaintiff about 100 feet away, coming into the curve in the middle of the road, at a speed, which he estimated to be 50 to 60 miles per hour. At the time he first saw the motorcycle he was on the right side of the road but pulled over as far as he could to the right to avoid the collision. ·

As a result of the accident, Frank suffered a fracture of the middle shaft of his left femur and a comminuted fracture of the left tibia and fibula, undergoing operation therefor and hospitalization. He was taken to the hospital, following the accident, and was

placed in traction until July 18, 1956. Incisions were made and plates affixed to the bones in his lower and upper left leg, with screws to hold the bone in alignment. The nails, plates and screws were still in his leg at the time of the trial. There was testimony that it would be advisable to have them removed in the future. Following the initial operation, a cast was placed on appellant's leg extending from his hip to his toes, which was not removed until October 10, 1956. He walked on crutches until the latter part of November and used a cane until after Christmas. He remained in the hospital for a period of 29 days, during a considerable portion of which time he was under sedation.

Prior to the accident, he was paid a weekly wage of $55, from which $20 was deducted by his mother for room and board. Following the accident he received no wages until after Christmas, at which time he received $10 a week. From February until May, 1957 he received $15 a week and at that time his original salary was restored.

The verdict exceeded out-of-pocket expenses by $186.60, as to which the court below said: "This figure bears no discernible relation to plaintiff's alleged loss of wages. Similarly, if it was to be compensation for his pain and suffering, it is obviously inadequate. It is an odd figure and to us intelligible only as part of a compromise verdict. . . . Certainly if plaintiff was entitled to recover at all, he was entitled to be adequately compensated for his pain and suffering. His pain must have been considerable in view of the nature of the injuries which he received. It obviously cannot be contended that $186.60 adequately compensates him for that pain. The same is true with respect to his alleged loss of wages."

We agree, after a careful study of this record, with the reasoning of Judge PALMER, who wrote the opinion for the court en banc below that: "Considering all of the testimony, we believe the contributory negligence of the plaintiff and the negligence of the defendant were debatable questions. The verdict properly could have gone either way. The case in this respect is similar to Carpenelli v. Scranton Bus Company, 350 Pa. 184, where the lower court's denial of plaintiff's motion for a new trial on the ground of inadequacy of a $3,000 verdict was affirmed in a case in which plaintiff proved he had suffered a fracture of the right femur, spent a year in the hospital and had actual medical expenses of $2,600 together with a major loss of earnings and earning power. The Supreme Court there said: '. . . when liability is admitted by the defendant, or when the evidence is clearly preponderant in favor of the plaintiff, it is . . . possible to say, with some fair measure of certainty, whether the verdict properly covered the items of damages for which recovery should have been allowed or whether it was inadequate. But when the evidence is equally divided in weight, or, a fortiori, when the preponderance of testimony is clearly with the defendant and the verdict rendered for the plaintiff, while small, is substantial, the problem becomes one of an entirely different nature, for in such event it can no more reasonably be said that the plaintiff recovered too little than that he should not have recovered at all; therefore, in such a case, it is just as likely, that the granting of a new trial would constitute an act of injustice to the defendant rather than one of justice to the plaintiff.' "

"Where the evidence of negligence or contributory negligence, or both, is conflicting or not free from doubt, a trial judge has the power to uphold the time-honored right of a jury to render a compromise verdict, and to

sustain a verdict which is substantial. . ." *Karcesky v. Laria,* 382 Pa. 227, 235, 114 A. 2d 150 (1955). "When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion, will not interfere. . . When a trial court refuses to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action. . ." *Carpenelli v. Scranton Bus Co.,* 350 Pa. 184, 187, 38 A. 2d 44 (1944).

The grant or refusal of a new trial for inadequacy of the verdict is matter for the sound discretion of the trial court whose action will not be reversed except for a clear abuse of discretion. *Elza v. Chovan,* 396 Pa. 112, 152 A. 2d 238 (1959) ; *Sherman v. Manufacturers L. & H. Co.,* 389 Pa. 61, 132 A. 2d 255 (1957). "The refusal of a new trial sought because of alleged inadequacy of the verdict is a matter peculiarly within the discretion of the trial court, and the appellate court will not reverse unless the verdict is so unreasonable as to bring a conviction that it was influenced by partiality, passion, or prejudice, or by some misconception of the law or evidence in the case." *Mohler v. Worley,* 179 Pa. Superior Ct. 56, 116 A. 2d 342 (1955). See also: *Krusinski v. Chioda,* 186 Pa. Superior Ct. 419, 142 A. 2d 780 (1958). See *Simpkins v. Richey,* 192 Pa. Superior Ct. 46, 159 A. 2d 17 (1960) ; *Salemmo v. Dolan,* 192 Pa. Superior Ct. 51, 159 A. 2d 253 (1960).

We believe the recent case of *Bell v. Yellow Cab Company,* 399 Pa. 332, 160 A. 2d 437 (1960), where the Supreme Court held that the granting of a new trial, on the ground of excessiveness, is reviewable on the merits and not merely for a palpable abuse of discretion is clearly distinguishable from the case at bar. In the *Bell* case, as Chief Justice JONES points out, "No serious doubt can reasonably be thought to exist as to the taxi-

cab driver's negligence in striking the plaintiff nor that such negligence was the proximate cause of the plaintiff's injuries. . . The record is replete with testimony which fully justifies the amount awarded the plaintiff." This was a case of a grant of a new trial on the ground of excessiveness of the verdict, and the question of compromise verdict was not involved. It seems, too, that if the negligence is clear and the amount awarded clearly supported by the evidence, that then, the grant of a new trial on the ground of excessiveness would be a capricious and a gross abuse of discretion.

Although we recognize that the distinction between an inadequate verdict and a compromise verdict is often difficult to make, *Cason v. Smith,* 188 Pa. Superior Ct. 376, 146 A. 2d 634 (1958), in this case we agree with the court below that the negligence was clearly a debatable question, and although the amount of the verdict was just about the actual expenses, it is still substantial and reflects a compromise by the jury.

Judgment affirmed.