Hilscher *v.* Ickinger et ux., Appellants.

238

Argued September 19, 1960; reargued December 15, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Michael A. Foley,* for appellants.

*Alan Kahn,* with him *Winokur & Kahn,* for appellee.

OPINION BY WOODSIDE, J., December 30, 1960:

This is an appeal by the defendants from the refusal of the court below to grant judgment n.o.v., and from the granting of a new trial for inadequacy of a jury verdict of $3000 in a trespass action.

Helen Hilscher, a 70 year old widow, visited Carletta and Fred Ickinger, her daughter and son-in-law, at their home, 2656 South 72nd Street, Philadelphia, on May 12, 1957. She arrived between 6 and 7 o'clock in the evening and left about 11:45 P.M. An open concrete porch in front of the Ickinger house is separated from the porch of the adjoining premises by an iron railing which extends from the wall of the house to the front edge of the porch and down a flight of three steps to a pavement below. The railing is supported by metal uprights imbedded in the concrete porch and steps.

When the plaintiff, with a plant in her right hand and a pocketbook in her left hand, stepped off the porch to the top step, she "hit this hard object that was there, and it twisted [her] foot and down [she] went." The plaintiff suffered injuries in her fall for which she brought this action against her daughter and son-in-law who owned the premises where she fell. The plain-

tiff apparently stepped upon a wooden wedge, approximately 4½ inches long, ½ inch wide and tapering from ½ inch thick to paper thin, which came from between the upright bars of the railing and one of the concrete steps, where it had been first driven into place by Fred Ickinger three or four years before in order to steady the railing and keep it firm.

The plaintiff looked at the step and did not see the wedge when she went up the steps that evening. There was no evidence from which it could be inferred that the defendants had either actual or constructive notice of the presence of the wedge on the step. See *Lanni v. Pa. R. R. Co.*, 371 Pa. 106, 110, 88 A. 2d 887 (1952).

As a social visitor at the home of her daughter, the plaintiff was a gratuitous licensee, Restatement of Torts, §331, Comment (a) (3), and was entitled at most to knowledge of such dangerous conditions as the defendants knew. Restatement of Torts, §342, Comment (c); *Matthews v. Spiegel*, 385 Pa. 203, 122 A. 2d 696 (1956).

Recognizing that the defendants had no notice of the presence of the wedge on the step, the court below, nevertheless, refused the motion for judgment n.o.v. stating as follows: ". . . there was evidence from which the jury could find that the manner of the block's insertion between the post and the step riser, which the defendant described as being merely hammered into place, was itself negligent, and, because of the likelihood of the block's falling out with shaking and vibration of the railing, the whole arrangement formed a condition dangerous to anyone entering upon the steps in the dark, as the plaintiff here did."

During the three or four years that the wedge was in place, there was one occasion when it was dislodged by children, who had rocked the railing so severely that

the defendant left the inside of his home to. "raise Cain" with them. This, the court below concluded, put the defendants on notice that the wedge was negligently inserted and constituted a dangerous condition which the defendants should have foreseen.

Although we consider the question of liability to be close, the majority of this Court is of the opinion that the evidence was sufficient to submit the question to the jury. Judgment n.o.v. should be entered only when the lack of negligence or the presence of contributory negligence is so clear that reasonable minds cannot differ concerning it. *Jordan v. Kennedy*, 180 Pa. Superior Ct. 593, 596, 119 A. 2d 679 (1956).

The question of the plaintiff's contributory negligence is not free from doubt, but was for the jury. She testified that she was sure that she had hold of the railing immediately before she fell, but at the pretrial examination she said under oath that she did not have hold of the railing, was walking in about the middle of the steps and "did not go to the railing," she "never bothered with the railing." She testified that the light from the street enabled her to see the front part of the step but that she saw only about halfway back, and thus could not see the part of the step where the testimony indicates she stepped on the wedge.

It is our duty to review the evidence in the light which would be most likely to support the verdict. In doing so, we have concluded that the verdict should be sustained. We are all satisfied that the granting of a new trial for inadequacy of verdict was an abuse of discretion and must be reversed.

The verdict was for $3000. The plaintiff's medical expenses were $796. Prior to her injury she had been a practical nurse, but had earned nothing in 1957 or 1956 and had earned only $94.70 in 1955 and $640 in 1954.

As she had earned less than $100 in a period of nearly 2½ years prior to the accident, when she was 70 years of age, the jury was justified in finding her loss of earnings and earning power were negligible. She undoubtedly suffered pain and will continue to suffer some discomfort and disability.

The mere fact that a verdict is low does not mean that it is inadequate. Compromise verdicts are both expected and allowed: *Karcesky v. Laria,* 382 Pa. 227, 114 A. 2d 150 (1955). "The compromise may arise out of damages or negligence or the balance of evidence concerning either or both, and the grant of a new trial may be an injustice to the defendant rather than an act of justice to the plaintiff." *Elza v. Chovan,* 396 Pa. 112, 115, 152 A. 2d 238 (1959).

Although appellate courts support the action of a trial court in granting a new trial unless there is a clear abuse of discretion, they do not abdicate their reviewing function in such cases. This Court has the duty to determine from the record whether or not the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make a new trial imperative. *Ropele v. Stewart,* 185 Pa. Superior Ct. 522, 531, 532, 137 A. 2d 895 (1958); *Elza v. Chovan,* supra, P. 117; *Decker v. Kulesza,* 369 Pa. 259, 263, 85 A. 2d 413 (1952).

Where the liability of the defendants is not free from doubt, the jury has a time honored right to render a compromise verdict which the courts generally sustain when it is substantial. *Padula v. Godshalk,* 192 Pa. Superior Ct. 618, 625, 161 A. 2d 919 (1960); *Simpkins v. Richey,* 192 Pa. Superior Ct. 46, 49, 159 A. 2d 17 (1960).

The plaintiff argues that since the defendants offered no testimony (defendant, Fred Ickinger, was called by the plaintiff on cross-examination), the ver-

dict could not be looked upon as a compromise. This is error. Whenever there is substantial doubt as to the liability of the defendants, there can be a compromise verdict. A doubt concerning liability, which necessitated a reargument in this Court, supports an inference that the jury, too, entertained substantial doubts concerning the defendants' liability.

The efficacy of the jury system is that it recognizes the grays which the law too frequently assigns to the limited categories of black and white. Jurors have a tendency to view the evidence as a whole and to apply to it their accumulated experience and combined sense of justice to arrive at a result they believe to be fair to all the parties under all the circumstances. See *Friedman v. Matovich,* 191 Pa. Superior Ct. 275, 156 A. 2d 608 (1959).

The evidence of the plaintiff's injuries may be summarized as follows: After she fell, she was immediately taken to the hospital where she was treated and discharged an hour later. The next day her family physician examined her and found: "She had laceration and swelling and contusion of both legs. She had an infection and a large ulcer on the left leg, with a rupture of a varicose vein. The laceration on the left leg was rather large. She had a contusion and ecchymosis of the left shoulder and upper back." X-rays taken that day proved to be negative.

It was discovered that the plaintiff had diabetes which slowed the healing of her leg, and in the latter part of May she returned to the hospital where she stayed for ten days. Although the leg subsequently improved, the shoulder grew more painful and its motion became limited. She was referred to Dr. Raymond O. Stein, noted orthopedic surgeon, who, called as the plaintiff's witness, testified that when he first examined her on December 10, 1957, "the left shoulder could be adducted to about eighty degrees, both in the lateral

and in the forward plane"; that there was "marked swelling of the entire arm, particularly from the elbow down", and that she was "only able to make about three quarters of a fist with the left hand." He said that the plaintiff was suffering from an adhesive capsulitis of the shoulder.

He testified that "The treatment for this condition is to put a patient in the hospital, give them a general anesthetic and then to manipulate the shoulder, under anesthesia, to break up the adhesions." He stated that the necessary hospital care usually lasts a week or ten days, after which the patient is put on a program of physical therapy and stretching exercise for approximately six weeks and that there is no other known treatment that helps this condition. The plaintiff, however, refused the treatment because she feared the general anesthesia, and the pain which would follow the manipulation of the arm. Dr. Stein stated that when he examined the plaintiff immediately before the trial in January of 1960, the shoulder was a little better and the hand a little worse, and that the situation is likely "to remain just about the way it is."

The plaintiff, undoubtedly, suffered considerable pain, and will continue to suffer some pain and disability, much of which is apparently unnecessary. Dr. Stein testified that she "should have had the procedure done," that "the probabilities are that she would have had a perfectly good arm at this point," that no reputable doctor would guarantee the results of any procedure but "we reasonably promise a good result in seventy-five percent of the cases and that we can be reasonably sure of getting some improvement in the rest of the cases;" and that he was "very distressed" that she would not submit to the treatment.

The treatment requires no incision, but only manipulation of the arm. General anesthetics are now so frequently and extensively used that a willingness to

suffer rather than to submit to treatment seems unreasonable no matter how "sincere" the plaintiff's fear may have been. Although the plaintiff's duty to minimize her damages may not deny her the right to recover *something* for present pain and disability, her refusal to submit to treatment of the type here specified may properly have been considered by the jury in determining the amount of damages to which she is entitled. Her refusal to submit to treatment may have seemed unreasonable to the jury or may have convinced it that her pain and disability were not as annoying to her as may have otherwise appeared. See 11 P.L.E. Damages §23; *Dougherty v. Phila. & W. C. Traction Co.*, 65 Pa. Superior Ct. 267, 269 (1916); *Vallo v. U. S. Express Co.*, 147 Pa. 404, 409, 23 A. 594 (1892); *Kehoe v. Allentown & Lehigh Valley Traction Co.*, 187 Pa. 474, 41 A. 310 (1898).

We believe that this was a compromise verdict which arose out of the evidence concerning damages *and* negligence, and that the refusal of the court below to accept the jury's judgment in the matter was error. See *Caine v. Collins*, 194 Pa. Superior Ct. 230, 166 A. 2d 675 (1960).

Order of the court below refusing to enter judgment n.o.v. is affirmed. The order granting a new trial is reversed and judgment is directed to be entered on the verdict.

MONTGOMERY, J., would grant judgment n.o.v.